IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| JACOB RHODES, a minor, by and through his biological mother, DIANA RAY MOORE; DIANA RAY MOORE, Individually, )<br><br>Plaintiffs, )<br><br>VS. )<br><br>SUSAN WALLACE, Individually; HENDERSON COUNTY BOARD OF EDUCATION, )<br><br>Defendants. ) | No. 1:04-1191-T-An |

---

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT SUSAN
WALLACE'S MOTION татан DISMISS

---

Plaintiffs, Jacob Rhodes and his biological mother, brought this action initially in the Circuit Court for Henderson County, Tennessee, against Defendants Susan Wallace and the Henderson County Board of Education. Plaintiffs alleged negligence, assault, battery, negligent infliction of emotional distress, intentional infliction of emotional distress, and violation of Jacob's civil rights under 42 U.S.C. § 1983. On August 16, 2004, Defendant Henderson County Board of Education ("the Board") removed the case to this court pursuant to 28 U.S.C. § 1441. Susan Wallace now moves to dismiss Plaintiffs' § 1983 claims that are based upon the Fourth and Eighth Amendments. For the following reasons,

Susan Wallace's motion to dismiss Plaintiffs' Eighth Amendment claim is GRANTED and her motion to dismiss Plaintiffs' Fourth Amendment claim is DENIED.

I.

Jacob Rhodes and his mother, Diana Ray Moore (collectively "Plaintiffs"), are residents of Henderson County, Tennessee. At the time of the events leading to this lawsuit, Jacob was either five (5) or six (6) years of age. (See Pls.' Compl. at ¶¶ 1, 8, 14). During late 2002, Jacob began attending preschool at Beaver Elementary School in Henderson County. (See Pls.' Compl. at ¶¶ 7, 8). Because he suffered from Rubinstein-Taybi Syndrome ("RTS"), or mental retardation, Jacob was a "special needs" student and the school placed him in a special education classroom. (See Pls.' Compl. at ¶¶ 9, 10, 11). Defendant Susan Wallace ("Wallace") was the teacher assigned to that special education classroom. (See Pls.' Compl. at ¶ 14).

According to Plaintiffs, as soon as Jacob began attending Wallace's class, Wallace engaged in various forms of abuse directed toward Jacob and other students. For example, Plaintiffs allege that Wallace took advantage of her disciplinary authority over Jacob and the other students by, among other things, screaming at Jacob uncontrollably and on a daily basis, strapping Jacob to a cot for hours at a time to keep him from moving, placing a "lead physical therapy vest on him while strapped to his cot," hitting Jacob with "flyswatters and yardsticks" and her hands, and committing "other inappropriate and dangerous acts and

2

disciplinary measures." (See Pls.' Compl. at ¶ 16). Plaintiffs have also suggested that Wallace may have required Jacob and other students to "drink water from a toilet." (See Pls.' Mem. Opp. Wallace's Mot. to Dismiss at 2). These alleged misdeeds took place on an uninterrupted basis until early to mid-2004, when the Board removed Wallace as a result of a related criminal investigation. (See Pls.' Compl. at ¶ 14).

Jacob filed suit in state court through his mother, who also brought an action in her individual capacity. (See Compl.). Plaintiffs named Wallace and the Board as Defendants. Plaintiffs asserted claims under state tort law and under 42 U.S.C. § 1983. The Board then removed Plaintiffs' claims to this court.

Before the court is a motion, by Wallace, to dismiss two of Plaintiffs' § 1983 claims. Wallace first moves to dismiss Plaintiffs' claim that her alleged actions constitute "cruel and unusual punishment" under the Eighth Amendment. Wallace argues that the Eighth Amendment is simply an improper constitutional framework within which to consider the abusive conduct of a public school teacher toward her students. Second, Wallace seeks dismissal of Plaintiffs' claim that Wallace unreasonably "seized" Jacob in violation of the protections of the Fourth Amendment. In particular, Wallace contends that, because the "principal concern" of the Fourth Amendment is "intrusions on privacy in the course of criminal investigations," (see Wallace's Mem. Supp. Mot. to Dismiss at 2), the Fourth Amendment does not operate to protect public school students from excessive force inflicted upon them by public school teachers who abuse their disciplinary authority. Plaintiffs have

3

responded to both of these arguments. (See Pls.' Mem. Opp. Wallace's Mot. to Dismiss at 3–6).

II.

Wallace's motion to dismiss is governed by Rule 12 of the Federal Rules of Civil Procedure. Rule 12 provides for dismissal of an action when the complaint "fails to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When deciding a 12(b)(6) motion to dismiss, the court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of [the] claims that would entitle [the plaintiff] to relief." Cline v. Rogers, 87 F.3d 176, 179 (6th Cir. 1996).

A person who sues under § 1983[1] must establish two elements to prevail. First, the plaintiff must show that he was deprived of a right secured by the United States Constitution or the laws of the United States. Second, he must demonstrate that he was subjected or caused to be subjected to the constitutional deprivation by a person acting under color of

---

[1] § 1983 provides, in relevant part, that,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983.

4

state law. Davenport v. Simmons, 192 F. Supp.2d 812, 817–18 (W.D. Tenn. 2001) (citing Searcy v. City of Dayton, 38 F.3d 282, 286 (6th Cir. 1994) (citing Flagg Bros. v. Brooks, 436 U.S. 149, 155 (1978))). Here, the issue is whether the allegations of the complaint, taken as true and viewed in Plaintiffs' favor, would constitute a violation of "a right [or rights] secured by the United States Constitution" and remediable under § 1983.

III.

A. The Eighth Amendment

The Eighth Amendment to the United States Constitution provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, *nor cruel and unusual punishments inflicted*." U.S. CONST. amend. VIII[2] (emphasis added). The Supreme Court has concluded that only a certain subcategory of "cruel and unusual" government behavior, or "punishment," violates the Eighth Amendment as opposed to some other constitutional provision or to none at all. See, e.g., Ingraham v. Wright, 430 U.S. 651 (1977). Specifically, the Court has held that government conduct is not to be scrutinized under the amendment unless and until the government has secured a formal adjudication of the "punished" person's guilt in a criminal prosecution. See id. at 671 n.40 (citing United States

---

[2] The amendment is applicable to the states and to state actors by virtue of the Due Process Clause of the Fourteenth Amendment. See U.S. CONST. amend. XIV, § 1 ("No State shall . . . deprive any person of life, liberty, or property, without due process of law."); Robinson v. California, 370 U.S. 660, 666 (1962); Louisiana *ex. rel.* Francis v. Resweber, 359 U.S. 459, 463 (1947).

5

v. Lovett, 328 U.S. 303, 317–18 (1946). The Court's reasoning was grounded in the text and history of the amendment as well as in prior precedent. Id. at 664–68 (noting that the "primary purpose of [the Cruel and Unusual Punishments Clause] has always been considered, and properly so, to be directed at the method or kind of punishment imposed for violation of criminal statutes") (quoting Powell v. Texas, 392 U.S. 514, 531–32 (1968)).

Despite the obvious meaning of Ingraham as applied to the facts of this case, Plaintiffs nonetheless argue that this court should either factually distinguish this case or "change . . . the law." Plaintiffs first argue that what Wallace allegedly did to Jacob was subjectively more "cruel and unusual" than what happened to the petitioners in Ingraham. (See Pls.' Mem. Opp. Wallace's Mot. to Dismiss at 3–4). Those petitioners, however, claimed state conduct that was far more egregious than Plaintiffs acknowledge. One petitioner claimed that two assistant principals had grabbed him and hit him twenty (20) times with a paddle, and the other petitioner claimed that he had been paddled on his arm, back, neck, and wrist. See Ingraham v. Wright, 525 F.2d 909, 911 (5th Cir. 1976), aff'd, 430 U.S. 651 (1977). Thus, contrary to Plaintiffs' attempt to draw a distinction between "mere" corporal punishment and "cruel and unusual" corporal punishment, Ingraham did not base its decision on any such distinction but instead simply held the Eighth Amendment inapplicable to punishment, of whatever severity, inflicted by public school officials exercising disciplinary authority in the public school system, Ingraham v. Wright, 430 U.S. 651, 671 (1977).

6

Plaintiffs also point out that Ingraham was decided almost three (3) decades ago and that only five (5) Justices signed the majority opinion limiting the Eighth Amendment to the post-conviction treatment of criminal offenders. (See Pls.' Mem. Opp. Wallace's Mot. to Dismiss at 4). Apparently, Plaintiffs consider the length of time that has transpired since Ingraham was decided as a factor that would justify changing instead of adhering to precedent. Even if the court agrees, neither time nor a persuasive dissent would permit this court to disregard an unambiguous and applicable decision of the Supreme Court.

Last, Plaintiffs contend that, because of "the evolution of our society," the Supreme Court would likely hold that the abuse alleged in this case was cruel and unusual and violated the Eighth Amendment. (See Pls.' Mem. Opp. Wallace's Mot. to Dismiss at 4). In other words, Plaintiffs insist that society in 1977 may have accepted screaming, tying a child to a cot under a lead vest, striking him with flyswatters and yardsticks and hands, and/or forcing him to drink from a commode, but that society in 2005 would necessarily condemn such conduct by a public school teacher. This argument is not persuasive because it confuses the question of whether the Eighth Amendment is even a relevant limit on particular government conduct with the question of whether conduct admittedly governed by the Eighth Amendment (such as the execution of a prisoner) has become "cruel and unusual" under society's "evolving standards of decency." See Ingraham, 430 U.S. at 668 n.36 (noting that the concept of cruel and unusual *criminal punishment* may "become[] enlightened by a humane justice"); see also Roper v. Simmons, 125 S.Ct. 1183, 1190 (2005)

7

(discussing "evolving standards of decency" in the death penalty context). This case is concerned only with the first question, and the answer to that question is controlled by Ingraham and not amenable to any evolving standards other than those enunciated by the Supreme Court itself.

Indeed, the factual allegations of Plaintiffs' complaint do accuse Wallace of serious, severe, "cruel and unusual" conduct. (See Pls. Compl. and Mem. Opp. Wallace's Mot. to Dismiss). Viewing those accusations in Plaintiffs' favor, the conduct was also arguably imposed as some form of "punishment" against Jacob. Notwithstanding and assuming all of this, such punishment by this defendant simply does not implicate the Eighth Amendment. The "plaintiff undoubtedly can prove no set of facts in support of [the] [Eighth Amendment] claims that would entitle [the plaintiff] to relief." See Cline v. Rogers, 87 F.3d 176, 179 (6th Cir. 1996) (second brackets added).

Accordingly, Wallace's Rule 12(b)(6) Motion to Dismiss Plaintiffs' Eighth Amendment claim is GRANTED.

### B. The Fourth Amendment

Whether Plaintiffs have stated a claim under the Fourth Amendment presents a more difficult question. That amendment grants "the people" a constitutional right "to be secure in their persons . . . against unreasonable searches and seizures." U.S. CONST. amend. IV. It has been incorporated into the Due Process Clause of the Fourteenth Amendment and thus

applies with equal force to both federal and state actors. See, e.g., Mapp v. Ohio, 367 U.S. 643 (1961).

Under the Fourth Amendment, a seizure occurs when a government agent restrains a person's freedom of movement in such a way that a reasonable person in the same position would not feel free to walk away. See, e.g., Elwoski v. City of Brunswick, 287 F.3d 492, 506 (6th Cir. 2002) (citing Michigan v. Chesternut, 486 U.S. 567, 573 (1988)). The government agent must intentionally acquire physical control over the person seized. See, e.g., id. (citing Brower v. County of Inyo, 489 U.S. 593, 596 (1989)). Additionally, unless and until the person is successfully restrained by physical force or a show of authority, a Fourth Amendment seizure has not transpired. Id. (citing California v. Hodari D., 499 U.S. 621 (1991)).

Wallace argues that the constitutional proscription of unreasonable seizures by government agents is not controlling in cases where teachers are alleged to have used excessive force as a means of maintaining control over a classroom. (See Wallace's Mem. Supp. Mot. to Dismiss at 2). Ingraham, supra, did not resolve that question. See Ingraham v. Wright, 430 U.S. 651, 674 n.42 (1977). As pointed out by Wallace, the Court has in fact noted that one of the Framers' "principal concerns" in drafting the Fourth Amendment was "the pre-Revolutionary practice of using general warrants or 'writs of assistance' to authorize searches for contraband by officers of the Crown." New Jersey v. T.L.O., 469 U.S. 325, 335 (1985); see also Ingraham, 430 U.S. at 674 n.42 (acknowledging that the

9

Fourth Amendment is especially concerned with government invasions of legitimate expectations of privacy during the course of criminal investigations); Tennessee v. Garner, 471 U.S. 1, 7 (1985) (applying Fourth Amendment "seizure" analysis to the use of deadly force as a means of apprehending a criminal suspect).

The Fourth Amendment's protection of legitimate expectations of privacy, bodily movement, and security is not as limited as Wallace suggests. As noted by the Court in New Jersey v. T.L.O., although the historical roots of the Fourth Amendment are found in the law enforcement context, the "'basic purpose of this Amendment, as recognized in countless decisions of [the Supreme] Court, is to safeguard the privacy and security of individuals against arbitrary invasions by government officials.'" New Jersey v. T.L.O., 469 U.S. 325, 335 (1985) (citing Camara v. Municipal Court, 387 U.S. 523, 528 (1967)). Those interests suffer as a result of intrusions by a government actor regardless of whether the government actor's motive is to enforce the criminal law as opposed to some other standard. See id. (citing Marshall v. Barlow's, Inc., 436 U.S. 307, 312–13 (1978)). For these reasons, the Court in T.L.O. easily held that the Fourth Amendment protects public school children from unreasonable searches carried out by school officials. Id. at 334–37 (noting that school officials carry out searches and perform other disciplinary functions as representatives of the state and pursuant to state mandated disciplinary standards). This holding has been extended beyond the search context to apply to forceful disciplinary "seizures" effected by school teachers as well. See, e.g., Wallace v. Batavia School Dist., 68 F.3d 1010 (7th Cir. 1995).

Perhaps recognizing that the "original intent" argument was rejected in T.L.O., Wallace relies on a decision of the Sixth Circuit in which the court of appeals held that the student plaintiffs' claims of sexual and physical abuse against a teacher and soccer coach were governed by the "shocks the conscience" test of the "substantive due process" component of the Fourteenth Amendment. (See Def.'s Mem. Supp. Mot. to Dismiss at 2 n.1) (citing Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 724–26 (6th Cir. 1996)). In that case, the court of appeals explained that a plaintiff may allege two different types of substantive violations by state actors under the Due Process Clause of the Fourteenth Amendment,

> The first type includes claims asserting denial of a right, privilege, or immunity secured by the Constitution or by federal statute other than procedural claims under 'the Fourteenth Amendment *simpliciter*.'
>
> . . . .
>
> The other type of claim is directed at official acts which may not occur regardless of the procedural safeguards accompanying them. The test for substantive due process claims of this type is whether the conduct complained of 'shocks the conscience' of the court.

Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 724–26 (6th Cir. 1996) (internal citations omitted). In other words, if a plaintiff is alleging that particular government action violated a substantive right *not covered by a particular constitutional provision* or federal statute, *then* his claim should be characterized as a "substantive due process" claim. If, on the other hand, a plaintiff alleges that a state actor has deprived him of "due process" by

11

violating an independent constitutional provision, such as the Fourth Amendment, the standards applicable to that provision govern instead of the more vague standards that have been articulated under the more general notion of "substantive due process."

Lillard did not even address a claim that a public school teacher violated the Fourth Amendment by using excessive disciplinary force to acquire control over students. The issue in that case was what "test" applies ("shocks the conscience" or some other level of scrutiny) *when* an excessive force plaintiff *is* relying on the second type of substantive due process claim noted above. Lillard certainly does not stand for the proposition that students *must* bring all excessive force claims against school officials under the same theory as the Lillard plaintiffs even if a more explicit constitutional provision applies. Indeed, as noted by Wallace in her Motion to Dismiss, the Supreme Court has been skeptical of the "shocks the conscience" test and has instructed that when there is an "explicit textual source of constitutional protection against . . . physically intrusive governmental conduct," then Fourth Amendment analysis should apply instead of "the more generalized notion of substantive due process." Graham v. Conner, 490 U.S. 386, 395 (1989) (internal citations and quotation marks omitted). In short, Plaintiffs' Fourth Amendment claim is not foreclosed by Lillard.

Here, Plaintiffs have alleged facts that, if believed, would justify a finding that Wallace used her official authority to intentionally acquire physical and disciplinary control over Jacob in a manner that was objectively unreasonable under the totality of circumstances and that would lead a reasonable person in Jacob's position to believe that he was not free

12

to leave. In particular, Plaintiffs claim that Wallace "showed her authority" by "[d]aily uncontrolled screaming," by tying Jacob to a cot under a lead vest to keep him still, by "forcefully striking Jacob's person[] with inappropriate objects . . . such as flyswatters and yardsticks," by hitting Jacob with her hands, and by engaging in other inappropriate "disciplinary measures." If Wallace restrained Jacob's movement in the method alleged, she did so as a representative of the state seeking to "enforce" the "law" of the classroom. Like the school searches for cigarettes in T.L.O. were subject to Fourth Amendment analysis, this court concludes that the Fourth Amendment could also apply to a school teacher's use of force or other displays of disciplinary authority to "seize" her students.

Because Plaintiffs have alleged "a set of facts" that could support finding an unlawful seizure of Jacob's person in violation of the Fourth Amendment, Wallace's 12(b)(6) Motion to Dismiss that portion of Plaintiffs' complaint is DENIED.

IV.

For the foregoing reasons, Wallace's Motion to Dismiss Plaintiffs' Eighth Amendment claim is GRANTED and her Motion to Dismiss Plaintiffs' Fourth Amendment claim is DENIED.

IT IS SO ORDERED.

*James D. Todd*
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

August 25, 2005
DATE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 49 in case 1:04-CV-01191 was distributed by fax, mail, or direct printing on August 29, 2005 to the parties listed.

---

Lewis L. Cobb
SPRAGINS BARNETT COBB & BUTLER
312 East Lafayette St.
Jackson, TN 38302--200

Charles M. Purcell
WALDROP & HALL
106 S. Liberty Street
P.O. Box 726
Jackson, TN 38302--072

Larry L. Crain
BRENTWOOD LAW OFFICES
5214 Maryland Way
Ste. 402
Brentwood, TN 37027

Kenny Cavness
Henderson County Courthouse
Lexington, TN 38351

R. Dale Thomas
RAINEY KIZER BUTLER REVIERE & BELL
209 East Main Street
Jackson, TN 38302--114

Clinton H. Scott
SPRAGINS BARNETT COBB & BUTLER
312 East Lafayette St.
Jackson, TN 38302--200

Jennifer Craig
WALDROP & HALL
106 S. Liberty Street
P.O. Box 726
Jackson, TN 38302--072

Russell E. Reviere
RAINEY KIZER REVIERE & BELL
209 E. Main Street
Jackson, TN 38302--114

James Brandon McWherter
SPRAGINS BARNETT COBB & BUTLER
P.O. Box 2004
Jackson, TN 38302--200

Honorable James Todd
US DISTRICT COURT